**AFFIRMED and Opinion Filed February 13, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-18-01079-CV

### ANNE JANAI AND NEBO & FINCH, INC., Appellant
### V.
### SANFORD ROSE ASSOCIATES INTERNATIONAL, INC., Appellee

**On Appeal from the 219th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 219-05695-2016**

## MEMORANDUM OPINION

Before Justices Osborne, Partida-Kipness, and Pedersen, III
Opinion by Justice Partida-Kipness

Anne Janai and Nebo & Finch, Inc. (Nebo) (collectively, Janai-Nebo) appeal the trial court's grant of summary judgment to Sanford Rose Associates International, Inc. (Sanford) on Sanford's claims against Janai-Nebo for breach of a franchise agreement and associated personal guaranty, Janai's counterclaims, and Sanford's claim for actual damages and attorney's fees. In nine issues, Janai-Nebo contend that the trial court erred in granting Sanford's motions for summary judgment, sustaining Sanford's objections to Janai-Nebo's summary judgment evidence, and awarding damages and attorney's fees. We affirm the trial court's judgment in all respects.

## BACKGROUND

This case arises from a franchise agreement between Sanford, a Texas-based executive search firm and franchisor, and Nebo, the franchisee. On August 22, 2016, Janai signed the

agreement (Franchise Agreement) to establish a Sanford franchise in New Hampshire. One day later, the parties executed First and Second Amendments to the Franchise Agreement to modify certain terms and assign Janai's interests to Nebo, a New Hampshire corporation Janai established to operate the franchise. Janai is Nebo's sole member. Janai also executed a personal guaranty of Nebo's performance under the Franchise Agreement.

As modified by the First Amendment, the Franchise Agreement required Nebo to pay Sanford a franchise fee of $88,000, with 10% due at signing. The remainder was due on the later of: (1) the first day of Phase I New Franchisee training or (2) the date the franchisee's self-funding process was complete. "Self-funding" is a process in which the franchisee employs a third-party service provider to transfer personal retirement funds into a new investment vehicle from which the franchise fee is paid. Should the self-funding process fail, the franchisee must pay $31,200 within five days of notification of the failure, with the remaining $48,000, plus a $7,500 "payment plan fee," due twenty-four months after the Franchise Agreement effective date. Janai elected the self-funding option.

The Franchise Agreement also required Nebo to pay a periodic royalty to Sanford. Relevant to Sanford's claims, the Franchise Agreement required a minimum royalty of $2,500 per quarter starting ninety days after the franchisee began operations.

Janai paid Sanford $8,800 (10% of the franchise fee) upon signing the Franchise Agreement and attended Sanford's Phase I training in Dallas on or about September 26, 2016. Janai did not pay the remainder of the franchise fee at training, claiming the self-funding process was not complete.

On November 7, 2016, Janai sent an email to Nicholas Turner, Sanford's Co-CEO, in which she stated that she wished to terminate her franchise agreement. Turner responded that he regretted Janai did not wish to move forward with the franchise, but that Janai still owed the

remainder of the franchise fee and minimum royalties. Turner asked Janai to "make an offer to exit and buyout of the legal agreement . . . ." Janai replied and confirmed her desire to terminate the relationship. Janai stated, "It is not in my best interest to move forward with [Sanford] at present" and indicated that she would draft a termination letter. Janai confirmed in a later email to Turner that the "termination letter will not include a proposal that I pay a fee."

On November 9, 2016, Janai also informed her self-funding service provider that she had "put this on hold for a while" and asked the service provider to discontinue sending documents for her signature. Janai did not notify Sanford that she had discontinued the self-funding process.

Sanford sent a notice of default to Janai on November 11, 2016, giving Janai-Nebo ten days to cure the default by paying the remainder of the franchise fee. Janai-Nebo did not pay the remainder of the franchise fee, and Sanford sent a letter to Janai on November 28, 2016, terminating the Franchise Agreement.

## PROCEDURAL HISTORY

Sanford filed suit on December 28, 2016, seeking recovery of the unpaid franchise fee and royalties. Sanford brought claims for breach of the Franchise Agreement against both Janai and Nebo, breach of the personal guaranty against Janai, and quantum meruit and promissory estoppel against both Janai and Nebo. Sanford later amended its petition to add a claim of anticipatory breach of contract based on Janai's November 7, 2016 emails.

Janai-Nebo answered Sanford's original and amended petitions and filed counterclaims for violations of the Texas Deceptive Trade Practices Act (DTPA), common law fraud, fraud in the inducement, fraud in the factum, breach of the Franchise Agreement, negligent misrepresentation, per se DTPA violation through non-compliance with the Texas Business Opportunities Act (TBOA), and rescission.

The parties filed a series of motions for partial summary judgment. At issue in this appeal are five motions for partial summary judgment filed by Sanford:

- No-Evidence Summary Judgment on Janai's Counterclaims,

- Traditional Summary Judgment on Janai's Counterclaims,

- Summary Judgment as to Liability on Sanford's Anticipatory Breach Claims,

- Summary Judgment on Sanford's Breach of Contract Claim, and

- Summary Judgment on Damages.

The trial court granted these motions for summary judgment and issued a final judgment on August 21, 2018, awarding $125,308.46 in actual damages, $216,797.81 in attorney's fees, $895 in paralegal fees, $4,951.65 in litigation expenses, and $46,600.00 in appellate attorney's fees should Janai-Nebo unsuccessfully appeal. Janai-Nebo timely filed their notice of appeal on September 18, 2018.

**STANDARD OF REVIEW**

We review a trial court's summary judgment ruling *de novo*. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008).

A party without the burden of proof who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *see* TEX. R. CIV. P. 166a(b), (c). Once the movant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the claimant

to come forward with competent controverting evidence that raises a fact issue. *Van v. Pena*, 990 S.W.2d 751, 753 (Tex. 1999). A plaintiff is entitled to summary judgment on a cause of action if it conclusively proves all essential elements of the claim. *See* TEX. R. CIV. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986).

After an adequate time for discovery, a party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense. TEX. R. CIV. P. 166a(i). The motion must specifically state the elements for which there is no evidence. *Id.*; *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact. *See* TEX. R. CIV. P. 166a(i) & cmt.; *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003), *cert. denied*, 541 U.S. 1030 (2004).

When a party moves for summary judgment under both rules 166a(c) and 166a(i), we will first review the trial court's judgment under the standards of rule 166a(i). *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If the appellant failed to produce more than a scintilla of evidence under that burden, then there is no need to analyze whether the appellee's summary judgment proof satisfied the less stringent rule 166a(c) burden. *Id*.

## ANALYSIS

Janai-Nebo raise nine issues broadly asserting that the trial court erred in granting Sanford's motions for partial summary judgment.

### A. Waiver

Sanford contends that Janai-Nebo have waived their first, second, eighth, and ninth issues due to inadequate briefing. Before we consider the merits of the appeal, we address Sanford's contentions.

In their first issue, Janai-Nebo contend that the trial court erred "when it ruled, as a matter of law, that Appellants were not wrongfully terminated." Likewise, Janai-Nebo contend in their second issue that the trial court erred "when it ruled, as a matter of law, that Appellee did not commit a per se violation of the TDTPA." The argument following each of these issues does not direct the court to the trial court's order at issue, cite supporting legal authority, or explain how the cited facts support the argument. Thus, these issues present nothing for our review. *See* TEX. R. APP. P. 38.1(i) (An appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"). However, the arguments presented in these issues are cited in Janai-Nebo's fourth and third issues, respectively. We will consider these arguments to the extent they are incorporated into the fourth and third issues.

Janai-Nebo's eighth issue contains no argument at all but merely states, "The Final Judgment was premised upon the granting of the previous motions already briefed, which are incorporated herein by reference." Likewise, Janai-Nebo's ninth issue states only, "This point is briefed in Issue No. 6 *supra* [sic]." Neither of these issues presents anything for our review. *See id.* Additionally, "this court does not have a duty to review a voluminous record without guidance from the appellant to determine whether its assertion of reversible error is valid." *Keyes Helium Co. v. Regency Gas Services, L.P.*, 393 S.W.3d 858, 861 (Tex. App.—Dallas 2012, no pet.).

We overrule Janai-Nebo's first, second, eighth, and ninth issues.

## B.     No-Evidence Summary Judgment on Janai's Counterclaims

In their fourth issue, Janai-Nebo contend the trial court erred in granting Sanford's motion for partial no-evidence summary judgment on Janai's counterclaims.  We disagree.

When Sanford moved for partial no-evidence summary judgment, Janai's live counterclaims asserted that Sanford had:

- Violated the DTPA as codified in sections 17.46(b)(5), (7), and (23) of the Texas Business and Commerce Code;

- Violated the DTPA by failing to file a franchisor registration or exemption in violation of the TBOA;

- Committed common-law fraud, fraud in the inducement, and fraud in the factum by falsely representing the "nature of the franchise";

- Breached the Franchise Agreement and Janai's personal guaranty by "wrongful termination and wrongful demand and suit on the Personal Guaranty"; and

- Committed negligent misrepresentation.

Janai alternatively sought rescission of the Franchise Agreement.[1]

Sanford moved for partial no-evidence summary judgment on all of Janai's counterclaims. In its motion, Sanford detailed every element of each counterclaim, identifying the elements on which Janai lacked admissible evidence.  *See Timpte Indus.*, 286 S.W.3d at 310; TEX. R. CIV. P. 166a(i).

Janai-Nebo responded to Sanford's motion and offered into evidence:

- A copy of the Franchise Agreement,

- A copy of the First Amendment to the Franchise Agreement,

- A copy of Sanford's default and termination notices,

- Sanford's Franchise Disclosure Document,

---

[1] Although both Janai and Nebo originally asserted counterclaims, the live pleading when Sanford filed its motion was Janai's Third Amended Counterclaim, which did not include Nebo.  Janai-Nebo have not asserted on appeal that Nebo retains any unadjudicated counterclaims.

- Janai's affidavit, and

- Transcript excerpts from the depositions of Nick Turner, who Janai-Nebo allege drafted the Franchise Agreement, and Harvey Shapman, who Janai-Nebo allege sent the default and termination notices.

Sanford objected to certain statements in Janai's affidavit on the grounds that statements were conclusory, legal conclusions, irrelevant, or not based on personal knowledge. Sanford also objected to a portion of the Turner deposition transcript as calling for a legal conclusion. The trial court sustained Sanford's objections and granted Sanford's motion for partial no-evidence summary judgment.

The trial court did not specify the grounds on which it granted Sanford's motion. If a summary judgment order issued by the trial court does not specify the ground or grounds relied upon for a ruling, the ruling will be upheld if any of the grounds in the summary judgment motion can be sustained. *Bradley v. State ex rel. White*, 990 S.W.2d 245, 247 (Tex. 1999); *Hall v. Douglas*, 380 S.W.3d 860, 867 (Tex. App.—Dallas 2012, no pet.).

Janai-Nebo's fourth issue contains multiple sub-issues. We address each sub-issue separately.

### 1) Adequate Time for Discovery

Janai-Nebo note in their brief that no discovery deadline had been set at the time Sanford filed its motion for partial no-evidence summary judgment. Janai-Nebo took various depositions and propounded interrogatories and discovery requests before Sanford filed its motion. According to Janai-Nebo, the evidence produced through discovery demonstrates a fact issue regarding Janai's reliance on Sanford's alleged misrepresentations. Nonetheless, Janai-Nebo contend that "[s]ome evidence is in the possession of [Sanford] and has not been produced as of the no-evidence motion" and list individuals whom they wish to depose on "false promises and representations and intent," in reference to elements of their DTPA and tort claims.

Although not expressly stated in their brief, we take Janai-Nebo's argument to be that the trial court abused its discretion by hearing Sanford's no-evidence motion before an adequate time for discovery had passed. *See* TEX. R. CIV. P. 166a(i).

There is no bright-line requirement that the discovery period must have passed before a no-evidence motion can be filed. *Dishner v. Huitt-Zollars, Inc.*, 162 S.W.3d 370, 376 (Tex. App.—Dallas 2005, no pet.). A party contending that it has not had an adequate opportunity for discovery before a no-evidence summary judgment hearing must file either an affidavit explaining the need for further discovery or a verified motion for continuance. *Tenneco Inc. v. Enter. Products Co.*, 925 S.W.2d 640, 647 (Tex. 1996); *Killingsworth v. Hous. Auth. of City of Dallas*, 447 S.W.3d 480, 495 (Tex. App.—Dallas 2014, pet. denied); *see also* TEX. R. CIV. P. 166a(g), 251, 252. We review a trial court's decision to grant a continuance for additional discovery for abuse of discretion. *Patten v. Johnson*, 429 S.W.3d 767, 776 (Tex. App.—Dallas 2014, pet. denied).

After Janai-Nebo filed their response to Sanford's motion for partial no-evidence summary judgment, Sanford filed its reply and objections to Janai-Nebo's summary judgment evidence. Janai-Nebo filed a motion to strike the reply as not permitted under the rules and an "objection" to Sanford's objections.

Janai-Nebo also filed a verified Alternative Motion for Continuance. The Alternative Motion did not explain the need for further discovery but conditionally sought a continuance of the summary judgment hearing to give Janai-Nebo "appropriate opportunity to respond, amend, or supplement" only if the trial court denied Janai-Nebo's motion to strike and objection. *See Brown v. Brown*, 145 S.W.3d 745, 749 (Tex. App.—Dallas 2004, pet. denied) (motion for continuance that did not explain the need for further discovery is insufficient to show trial court abused its discretion in hearing no-evidence motion for summary judgment before end of discovery period or in determining the parties had adequate time for discovery). Janai-Nebo's Alternative Motion

also did not discuss the relevant factors or otherwise explain why the time between the filing of Sanford's original petition and summary judgment motion was not adequate. *See Killingsworth*, 447 S.W.3d at 495; *Robertson v. Sw. Bell Yellow Pages, Inc.*, 190 S.W.3d 899, 903 (Tex. App.—Dallas 2006, no pet.) (relevant factors include time allowed for discovery, what discovery was completed, what further discovery was needed, why the time allowed was not adequate). Regardless, Janai-Nebo contend that the evidence produced through discovery is sufficient to create a fact issue. We conclude that Janai-Nebo have failed to show the trial court abused its discretion by hearing Sanford's motion for partial no-evidence summary judgment when it did. *See Brown*, 145 S.W.3d at 749.

### 2) Janai's Counterclaims

#### a. Rescission

The entirety of Janai-Nebo's argument on Janai's rescission counterclaim is, "Recission/Restoration [sic] Order is an appropriate remedy under the TDTPA and for negligent misrepresentation."

We are not required to search the appellate record, with no guidance from the briefing party, to determine if the record supports the party's argument. *Pratt v. State*, 907 S.W.2d 38, 47 (Tex. App.—Dallas 1995, writ denied) (citing *Fredonia State Bank v. General Am. Life Ins. Co.*, 881 S.W.2d 279, 283 (Tex. 1994)). We also "know of no authority obligating us to become advocates for a particular litigant through performing their research and developing their argument for them." *Tello v. Bank One, N.A.*, 218 S.W.3d 109, 116 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (internal quotation omitted). Thus, an appellant's failure to cite legal authority or provide substantive analysis of a legal issue results in waiver of the complaint. *Fredonia State Bank*, 881 S.W.2d at 284 (observing that error may be waived by inadequate briefing); *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006, no pet.).

Janai-Nebo have failed provide any analysis of the legal issues presented on Janai's counterclaim for rescission. Accordingly, Janai-Nebo have waived any complaint as to the trial court's ruling on this counterclaim. *See Fredonia State Bank*, 881 S.W.2d at 284.

### b. DTPA and Fraud Claims

Janai-Nebo contend that "[t]here are fact issues on all elements of" Janai's counterclaims for DTPA violations, common-law fraud, fraud in the inducement, fraud in the factum, and negligent misrepresentation. Although such a general challenge to a summary judgment is sufficient to preserve error, the appellant must still present argument and legal authority "as to all the possible grounds upon which summary judgment should have been denied." *Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970); *Plexchem Int'l, Inc. v. Harris Cnty. Appraisal Dist.*, 922 S.W.2d 930, 930–31 (Tex. 1996); *Morrison v. Profanchik*, No. 05-17-01281-CV, 2019 WL 3798182, at *3 (Tex. App.—Dallas Aug. 13, 2019) (mem. op.), *supplemented by*, No. 05-17-01281-CV, 2019 WL 5112268 (Tex. App.—Dallas Oct. 10, 2019, no pet.) (mem. op.).

Janai-Nebo's sole legal argument is that the trial court should not have found for Sanford on the intent and reliance elements of these counterclaims because these elements present fact questions and are not suitable for summary judgment. Janai-Nebo fail to address Sanford's no-evidence challenge to the other elements of these counterclaims. Because Janai-Nebo do not challenge every ground on which the no-evidence summary judgment could have been granted on their DTPA and fraud counterclaims, we must affirm the judgment as to those counterclaims. *See Malooly Bros.*, 461 S.W.2d at 121; *Plexchem Int'l*, 922 S.W.2d at 930–31; *Anderton v. Cawley*, 378 S.W.3d 38, 57 (Tex. App.—Dallas 2012, no pet.).

Janai-Nebo also contend that the trial court erred in excluding portions of Janai's affidavit offered in response to Sanford's traditional and no-evidence motions for partial summary judgment on Janai's counterclaims.

There is no difference between the standards for evidence admissible in a summary judgment proceeding and those applicable to a regular trial. *Seim v. Allstate Texas Lloyds*, 551 S.W.3d 161, 163 (Tex. 2018) (per curiam). "Evidentiary rulings are committed to the trial court's sound discretion." *U-Haul Intern., Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012). A trial court abuses its discretion when it acts without regard for guiding rules or principles. *Id*.

Affidavits supporting or opposing summary judgment must be made on personal knowledge, must set forth such facts that would be admissible in evidence, and must show affirmatively that the affiant is competent to testify to the matters stated therein. TEX. R. CIV. P. 166a(f); *Kerlin v. Arias*, 274 S.W.3d 666, 668 (Tex. 2008) (per curiam). A conclusory affidavit is not sufficient to raise a fact issue to defeat summary judgment. *See Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999); *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996). The prohibition of conclusory evidence does not mean that logical conclusions based on stated underlying facts are improper. *See Thompson v. Curtis*, 127 S.W.3d 446, 450 (Tex. App.—Dallas 2004, no pet.). However, an affidavit is conclusory if it fails to explain the basis of the affiant's statements to link conclusions to facts. *See Earle*, 998 S.W.2d at 890.

Sanford objected to the following statements in Janai's affidavit on the grounds that the statements were either conclusory, legal conclusions, irrelevant, or not based on personal knowledge.

- I am a "consumer" as that word is defined in the Texas Deceptive Practices Act because the Franchise Agreement also included tangible goods and services.

- I am a Franchisee as that term is defined under the Franchise Rule, Texas Business Opportunity Act and the Texas Deceptive Trade Practices Act.

- All of the above [alleged promises] were false, misleading and deceptive. I relied upon these to my detriment when I signed the Franchise agreement, Guaranty, and paid the initial payment of ten percent of the franchise fee.

–12–

- Plaintif's [sic] actions as described above, [sic] are unconscionable because I am a single mother of limited means.

- [T]they [Sanford] wrongfully terminated me by ignoring paragraph 3 [payment terms] of the first amendment to the Franchise Agreement.

- The above actions of Plaintiff were a producing cause of me suffering the injuries described herein.

- Collectively and individually, the promises and representations described above were material to me when I signed the Franchise Agreement, Guaranty, and paid the ten percent of the franchise fee.

- After I took the actions described above in reliance of the promises and representations, I learned they were false. These promises, representations and acts were made at a time when the persons who told them to me knew they were false, had no intention of delivering on the promises or were made recklessly without knowledge of whether they were false. This is evidenced, in part, in the fact that they did not deliver as promised and terminated me wrongfully. I acted on these actions by Plaintiff which is the proximate cause of the injuries that I have described above.

"An affidavit showing no basis for personal knowledge is legally insufficient." *Kerlin*, 274 S.W.3d at 668. An improper legal conclusion is one that does not provide underlying facts to support the conclusion. *See Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex. 1991) (attorney's affidavit that stated only legal conclusions that "I acted properly," "have not violated the [DTPA]," and "did not breach my contract" did not provide underlying basis or reasoning to support conclusions and would not support summary judgment); *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984) (holding affidavits stating legal conclusions, not facts, incompetent summary judgment proof).

Janai-Nebo argue on appeal only that the doctrine of optional completeness demands that the entire affidavit be considered because Sanford cited only the "Topic Sentence[s]" of Janai's affidavit as conclusory in its objections. Janai-Nebo cite no legal authority and present no argument to support these claims, thus waiving argument as to the statements excluded from evidence. *See* TEX. R. APP. P. 38.1. Regardless, the rule of optional completeness does not apply

–13–

to a party's defense of its own affidavit. *See* TEX. R. EVID. 107 (permitting a party to inquire into other parts of a writing when only part of the writing is introduced by an *opponent*).

Waiver aside, the statements that Sanford objected to as conclusory and legal conclusions merely recite the elements of Janai's counterclaim. These statements are not competent summary judgment evidence. *See Cooper v. Circle Ten Council Boy Scouts of Am.*, 254 S.W.3d 689, 698 (Tex. App.—Dallas 2008, no pet.); *Garza v. Mut. of Omaha Ins. Co.*, No. 05-98-01093-CV, 2001 WL 873613, at *3 (Tex. App.—Dallas Aug. 3, 2001, no pet.) (op. on mot. for reh'g) (not designated for publication) (holding trial court did not abuse its discretion in striking affidavits that "make generalized assertions concerning all appellants and that provide legal conclusions concerning the elements of their causes of action").

Additionally, Janai's affidavit offered only that Sanford "did not deliver as promised" to demonstrate Janai's personal knowledge that Sanford had "no intention of delivering on the promises [made]." Misrepresentation and intent, however, are two separate elements of Janai's fraud claims. *See Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015); *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001). Thus, the failure to deliver on a promise is insufficient alone to show intent, *see Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998) ("[T]he mere failure to perform a contract is not evidence of fraud"), and Janai's affidavit offers no facts to support her alleged personal knowledge of Sanford's intent. *See Kerlin*, 274 S.W.3d at 668.

Finally, Janai's statement regarding her familial circumstances was properly stricken as irrelevant to her allegation that Sanford acted unconscionably. *See Bradford v. Vento*, 48 S.W.3d 749, 760 (Tex. 2001) (holding unconscionability requires proof the defendant took advantage of complainant's lack of knowledge); TEX. BUS. & COM. CODE ANN. § 17.45(5) (defining an

unconscionable action as "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree").

Janai-Nebo also contend that "[t]he court erred in denying Appellant's motion to supplement," citing TEX. R. CIV. P. 166a(f) for the proposition that a "court may permit affidavits to be supplemented or opposed by depositions or by further affidavits." Janai-Nebo do not direct the Court to the motion and order in question or offer any argument as to why supplementation should have been allowed, thus waiving this argument. *See Pratt*, 907 S.W.2d at 47; TEX. R. APP. P. 38.1. On the record before us, the trial court did not abuse its discretion in sustaining Sanford's objections and striking those portions of Janai's affidavit.

### c. Breach of Contract

As to Janai's breach of contract counterclaim, Janai-Nebo direct the Court to their first issue. In their first issue, Janai-Nebo cite and quote evidence, including the First Amendment to the Franchise Agreement, Sanford's default and termination notices, and transcript excerpts from the deposition of two Sanford employees to purportedly show that Sanford's franchise fee demand was premature. According to Janai-Nebo, the franchise fee was not due at the Phase I training, as asserted in Sanford's demand letter, because Janai's self-funding process was not yet complete.

In response to Sanford's motion for partial no-evidence summary judgment, Janai-Nebo had the burden to bring forward more than a scintilla of probative evidence that raises a fact issue. *See Smith*, 288 S.W.3d at 424. Given Janai-Nebo alleged that Sanford breached the Franchise Agreement by demanding the franchise fee before it was due, Janai-Nebo had the burden of offering evidence the franchise fee was not yet due when Janai attended Phase I training.

Aside from copies of Sanford's notices, Janai-Nebo offered only evidence of the language contained in the Franchise Agreement and the First Amendment to the Franchise Agreement. This evidence reflects only Sanford's alleged grounds for termination and the parameters for

–15–

determining when the franchise fee became due. It is no evidence whether the franchise fee had become due before Sanford issued its demand and termination notices.

Under the terms of the First Amendment to the Franchise Agreement, the timeframe for paying the franchise fee was extended past the Phase I training date to the date the self-funding process completed or failed. This provision is the sole basis of Janai-Nebo's claim that Sanford breached the Franchise Agreement by "wrongfully terminating" it before the franchise fee was due. Yet, Janai-Nebo offered no evidence showing that Janai's self-funding process was still in process when she attended the Phase I training or when Sanford issued its demand and termination notices. Indeed, Janai-Nebo offered no evidence of the self-funding process at all.

On the record before us, we overrule Janai-Nebo's fourth issue.

Sanford moved for both no-evidence and traditional summary judgment on Janai's counterclaims. Janai-Nebo's third issue seeks review of the trial court's order granting Sanford's traditional motion for summary judgment on Janai's counterclaims. Having overruled Janai-Nebo's fourth issue, however, we need not address Janai-Nebo's third issue. *See Ford Motor Co.*, 135 S.W.3d at 600 (if the appellant failed to produce more than a scintilla of evidence under the no-evidence burden, there is no need to analyze whether the appellee's summary judgment proof satisfied the less stringent traditional summary judgment burden).

### C. Summary Judgment on Sanford's Breach of Contract Claims

In their fifth and sixth issues, Janai-Nebo contend that the trial court erred in granting Sanford's motions for partial summary judgment on anticipatory breach of contract and breach of contract.

#### 1) Sanford's Anticipatory Breach of Contract Claim

Sanford moved for partial summary judgment on its assertion that Nebo had anticipatorily breached the Franchise Agreement and Janai had anticipatorily breached the personal guaranty.

Sanford offered into evidence, among other things, transcript excerpts from Janai's deposition and copies of Janai's emails with Sanford Co-CEO Nicholas Turner and Janai's self-funding provider Guidant Financial. There is no record of any objection by Janai or Nebo to Sanford's summary judgment evidence. Instead, Janai-Nebo argue that Janai's emails do not exhibit an unconditional declaration of intent not to perform the Franchise Agreement as required to prove anticipatory breach.

To prove anticipatory breach, a plaintiff must show that (1) the defendant repudiated the obligation (2) without just excuse and (3) plaintiff was damaged from the breach. *Taylor Pub. Co. v. Sys. Mktg., Inc.*, 686 S.W.2d 213, 217 (Tex. App.—Dallas 1984, writ ref'd n.r.e.) (op. on mot. for reh'g); *McDonald v. McDonald*, No. 05-15-00338-CV, 2016 WL 2764881, at *5 (Tex. App.— Dallas May 11, 2016, no pet.) (mem. op.). Janai-Nebo contest only the first element.

"Repudiation consists in such words or actions by a contracting party as indicate that he is not going to perform his contract in the future." *Group Life & Health Ins. Co. v. Turner*, 620 S.W.2d 670, 673 (Tex. Civ. App.—Dallas 1981, no writ) (internal quotation omitted); *White v. Harrison*, 390 S.W.3d 666, 672 (Tex. App.—Dallas 2012, no pet.). "A repudiation or anticipatory breach occurs when a party's conduct shows a fixed intention to abandon, renounce, and refuse to perform the contract." *Hunter v. PriceKubecka, PLLC*, 339 S.W.3d 795, 802 (Tex. App.—Dallas 2011, no pet.) (internal quotation omitted). There must be an unconditional declaration of an intention not to perform the contract. *Id*.; *Davis v. Canyon Creek Estates Homeowners Ass'n*, 350 S.W.3d 301, 313 (Tex. App.—San Antonio 2011, pet. denied) (citing *Pollack v. Pollack*, 39 S.W.2d 853, 857 (Tex. Comm'n App. 1931, holding approved), *reh'g denied*, 46 S.W.2d 292 (1932)).

The record reflects that the Franchise Agreement, as amended by the First Amendment, required Nebo to complete payment of the franchise fee by the later of the date on which Janai

attended Phase I training or the date on which Janai's self-funding process was complete. Janai attended Phase I training on September 26, 2016. The record reflects, and Janai-Nebo do not dispute, that Nebo did not pay the remainder of the franchise fee at this time. According to Janai-Nebo, this was because Janai's self-funding process was not complete. Yet, neither Janai nor Nebo produced any evidence to support this allegation.

On November 7, 2016, Janai emailed Turner, stating that she wished to terminate the Franchise Agreement, claiming personal concerns with the way in which Sanford operated. Janai-Nebo claim that the emails do not contain an unequivocal refusal to perform. *See Hunter*, 339 S.W.3d at 802; *El Paso Prod. Co. v. Valence Operating Co.*, 112 S.W.3d 616, 621 (Tex. App.— Houston [1st Dist.] 2003, pet. denied) ("To constitute a repudiation, a party to a contract must have absolutely and unconditionally refused to perform the contract without just excuse."). According to Janai-Nebo, the statements contained in Janai's emails were "taken out of context," "stated in the conditional future tense," and "an attempt to reach a settlement." We disagree.

Sanford offered into evidence the November 7, 2016 email exchange between Janai and Turner. In this exchange, Janai explained that her engagement with Sanford had "sent up all the red flags for [her]," and that she "can't commit the next several years of [her] life to an environment that will require [her] to live in that framework." Turner responded that he regretted Janai's decision to terminate her relationship with Sanford, reminded Janai that "[p]er the agreement the funds are still due," and asked for "an offer to exit and buyout of the legal agreement." Janai replied, "It is not in my best interest to move forward with [Sanford] at present," and promised to provide a termination letter. Janai sent a second reply asking whether Sanford's legal counsel would prepare the "termination letter/settlement proposal." Turner responded that Janai should prepare the "settlement letter and proposed fee." Janai replied, "[M]y termination letter will not include a proposal that I pay a fee. You will of course have the right to reject my termination letter

and pursue the options available to you." Janai claimed, "I can not [sic] work in a litigious environment."

Sanford also offered a November 9, 2016 email exchange between Janai and her self-funding provider Guidant Financial. The email exchange starts with an email from Guidant to Janai indicating it has a document for her to sign. Janai responded, "I've put this on hold for a while. So, no need to keep sending me docusigns. I've spoken to my Guidant representative about it." The email contains no indication of when Janai put the self-funding process "on hold."

Finally, Sanford offered into evidence deposition transcript excerpts in which Janai testified that her November 7, 2016 emails accurately stated her intention not to own or operate a Sanford franchise, that she did not continue the self-funding process after November 7, 2016, and that she did not pay the remainder of the franchise fee or minimum royalties.

Sanford's summary judgment evidence shows that Janai had a "fixed intention to abandon, renounce, and refuse to perform" the Franchise Agreement. *See Hunter*, 339 S.W.3d at 802; *see also Laredo Hides Co. v. H&H Meat Prods. Co.*, 513 S.W.2d 210, 216, 220–21 (Tex. Civ. App.—Corpus Christi–Edinburg 1974, writ ref'd n.r.e.) (finding anticipatory repudiation where defendant meat packer "unequivocally told [plaintiff's representative] that he was not going to sell him any more hides, and further advised that it was useless for him to send a truck for the hides"). *cf.*, *SAVA gumarska in kemijska industria d.d. v. Advanced Polymer Scis., Inc.*, 128 S.W.3d 304, 315 (Tex. App.—Dallas 2004, no pet.) (holding defendant manufacturer's letter refusing further performance until plaintiff buyer provided further assurance it would abide by agreement to purchase the manufacturer's product was not repudiation); *Harlan v. Tate*, No. 05-95-01346-CV, 1996 WL 743772, at *3–5 (Tex. App.—Dallas Dec. 30, 1996, no writ) (not designated for publication) (holding debtor's letter to creditor indicating debtor would not make an upcoming interest payment "short of a drastic turnaround immediately" was not a repudiation in light of debtor's testimony

that he suffered recent financial difficulties and never intended to abandon his contractual obligations).

Janai-Nebo also contend that Sanford's default and termination notices were insufficient because they failed to cite anticipatory breach as grounds for termination. Janai-Nebo, however, fail to cite any authority for the proposition that this alleged deficiency rendered the notices defective, thus waiving this argument. *See* TEX. R. APP. P. 38.1(i); *Tello*, 218 S.W.3d at 116.

Janai-Nebo also argue that Sanford did not give Nebo ten days to cure any alleged breach, as required by the Franchise Agreement. However, the November 11, 2016 default notice expressly states that Sanford "is . . . providing ten (10) days written notice of your default and an opportunity to cure by making this payment within the aforementioned ten (10) days." Sanford sent the termination notice on November 28, 2016, seventeen days later.

Sanford's summary judgment evidence conclusively established all elements of its anticipatory breach of contract claims, and Janai-Nebo failed to present evidence raising a fact issue. *See Van*, 990 S.W.2d at 753; *MMP*, 710 S.W.2d at 60. Accordingly, we overrule Janai-Nebo's fifth issue.

### 2) Sanford's Breach of Contract Claim

In their sixth issue, Janai-Nebo contend that the trial court erred in granting Sanford's motion for partial summary judgment on its breach of contract claim against Nebo.

After the trial court granted Sanford's motion for partial summary judgment on its anticipatory breach of contract claim, Sanford moved for partial summary judgment on its breach of contract claim on the ground that Nebo had failed to pay the remainder of the franchise fee due under the Franchise Agreement. Sanford relied on the same evidence offered in support of its motion for partial summary judgment on its anticipatory breach of contract claims to show that the franchise fee became due under the terms of the Franchise Agreement as soon as Janai stopped the

self-funding process. Sanford also offered Janai's deposition testimony that she did not notify Sanford that she had stopped the self-funding process as required by the First Amendment to the Franchise Agreement.

Janai-Nebo responded, reasserting their contention that that the franchise fee was not yet due at Phase I training, as Sanford alleged, because the self-funding process was not complete. According to Janai-Nebo, the payment was "delayed . . . to an indefinite time in the future." We disagree.

When construing a written contract, our primary concern is to ascertain and give effect to the true intentions of the parties as expressed in the agreement. *El Paso Field Sers., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 805 (Tex. 2012). We consider the entire writing and attempt to harmonize and give effect to all the provisions of the contract by analyzing the provisions with reference to the whole agreement. *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 311–12 (Tex. 2005) (per curiam); *Innovate Tech. Sols., L.P. v. Youngsoft, Inc.*, 418 S.W.3d 148, 151 (Tex. App.—Dallas 2013, no pet.). If a contract is susceptible to two constructions, one of which would render it valid and the other invalid, the construction validating it must prevail. *Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Ass'n*, 205 S.W.3d 46, 56 (Tex. App.—Dallas 2006, pet. denied).

Janai-Nebo's interpretation of the First Amendment to the Franchise Agreement would render the payment terms "illusory, void, and unenforceable," *Innovate Tech. Sols.*, 418 S.W.3d at 152, and is not supported by the plain language of the contract. The First Amendment expressly states that payment of the franchise fee is "consideration of [Sanford's] granting franchise rights to [Nebo]." Janai paid the 10% down payment, and payment of the remainder of the franchise fee was due under the First Amendment to the Franchise Agreement:

> no later than the first day of the Phase I New Franchisee training program if "self-funding" process complete otherwise, available exception: Franchisee is using the

service for "self-funding," as a result, final balance due will be delayed. Once process is complete per service provider, Franchisee will pay in full.

If the self-funding process "should fail to occur," the First Amendment established a payment schedule under which the initial payment was due "five (5) business days following the notification that the 'self-funding' process failed." The remainder of the franchise fee was due "within 24 months of the Franchise Agreement Effective Date."

On its face, the First Amendment unambiguously contemplates only two scenarios for the self-funding process: completion or failure. There is no scenario in which payment of the franchise fee would be delayed indefinitely, and such an interpretation would render Nebo's promised consideration illusory. *See In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010) ("When illusory promises are all that support a purported bilateral contract, there is no mutuality of obligation, and therefore, no contract."). Under the terms of the First Amendment, Nebo could only delay payment of the franchise fee until Janai's self-funding process completed or failed, assuming the process was still pending when Janai attended Phase I training.

Janai-Nebo offered no evidence to raise a fact issue as to whether the self-funding process was still pending either on September 26, 2016, when Janai attended Phase I training, or on November 11, 2016, when Sanford issued its default notice. Janai-Nebo do not contest that Janai ordered Guidant to put the self-funding process "on hold." Janai admitted in her deposition that she terminated the self-funding process, did not pay the remainder of the franchise fee, and had no intention of paying. Although Janai-Nebo offered no evidence to establish the date on which Janai stopped the self-funding process, the evidence does establish that she had stopped the process by November 9, 2016, at the latest.

Sanford's summary judgment evidence conclusively established all elements of its claim for breach of contract, and Janai-Nebo failed to present evidence raising a fact issue. *See Van*, 990 S.W.2d at 753; *MMP*, 710 S.W.2d at 60. Accordingly, we overrule Janai-Nebo's sixth issue.

### D. Sanford's Motion for Partial Summary Judgment on Damages

After the trial court granted Sanford's motion for partial summary judgment on its claims for breach of contract, Sanford moved for summary judgment on damages, seeking the present value of future contractual benefits and attorney's fees.

In support of its claim for contract damages, Sanford offered the affidavit of Sanford Co-CEO Jeff Kaye, in which Kaye calculated the present value of both the unpaid portion of Nebo's franchise fee and future minimum quarterly royalty payments using the current prime rate published in the Wall Street Journal. Under the terms of the Franchise Agreement, also offered into evidence, Nebo owed nineteen minimum quarterly royalty payments. Kaye prorated the first and last payments and simplified the present value calculation of all nineteen royalty payments by treating them all as due at the end of the five-year term specified in the Franchise Agreement. This simplification accrued to Nebo's benefit by understating the actual present value of all payments due before the end of the term.

Sanford moved for attorney's fees under both the Franchise Agreement and Janai's personal guaranty, using the "traditional" method for calculating attorney's fees. In support of its motion, Sanford offered attorney affidavits and billing records.

Janai-Nebo objected to Sanford's motion on the grounds that Kaye was not an expert on damages, the future royalty payments were not yet due because the Franchise Agreement does not contain an acceleration clause, and the amount of attorney's fees sought was unreasonable. In support of their objection to Sanford's attorney's fees calculation, Janai-Nebo offered their counsel's affidavit, in which counsel opined that there had been "over lawyering," Sanford had failed to segregate time spent on Sanford's claims versus Janai's counterclaims, the amount sought in damages did not justify the amount sought in attorney's fees, and there was no basis for the

calculation of contingent appeal fees. The trial court granted Sanford's motion, awarding contract damages, attorney's fees, and costs.

### 1) Contract Damages

In their seventh issue, Janai-Nebo contend that the trial erred in awarding damages in the form of future royalty payments because the Franchise Agreement does not contain an acceleration clause. Janai-Nebo cite no authority for this proposition.

"When a party who is obligated to make future payments of money to another absolutely repudiates the obligation without just excuse, the obligee is entitled to maintain his action for damages at once for the entire breach, and is entitled in one suit to receive in damages the present value of the future payments payable to him by virtue of the contract." *Taylor Pub. Co.*, 686 S.W.2d at 217 (citing *Universal Life & Accident Ins. Co. v. Sanders*, 102 S.W.2d 405 (Tex. [Comm'n Op.] 1937)); *Jenkins v. Jenkins*, 991 S.W.2d 440, 448 (Tex. App.—Fort Worth 1999, pet. denied) (holding the trial court should have awarded present value of all future alimony payments in light of obligor's repudiation of alimony agreement) *cf. Watson v. Purvis*, No. 14-18-00132-CV, 2019 WL 2939816, at *6–7 (Tex. App.—Houston [14th Dist.] July 9, 2019, no pet.) (mem. op.) (reversing an award of future contract installment payments because plaintiff did not allege or prove anticipatory breach of all future payments).

Nebo was obligated under the Franchise Agreement to pay a minimum royalty payment of $2,500 per quarter beginning ninety days after Nebo began operations. As previously discussed, the trial court properly granted summary judgment on Sanford's claim that Nebo repudiated its obligations under the Franchise Agreement. Thus, the trial court properly awarded Sanford the present value of all future minimum royalty payments. *See Taylor Pub. Co.*, 686 S.W.2d at 217.

### 2)     Attorney's Fees

Janai-Nebo also contend in their seventh issue that the trial court erred by awarding Sanford attorney's fees.  We review a court's decision to award attorney's fees for an abuse of discretion. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 761 (Tex. 2012).

In its brief, Sanford claims that Texas recognizes two methods for calculating reasonable attorney's fees: the lodestar method and the "traditional" method.  Sanford applied the "traditional" method in its motion for partial summary judgment on damages.  A recent Texas Supreme Court opinion, however, has dispelled the notion that there are two methods.

In *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, the court addressed whether evidence presented was sufficient to award attorney's fees under Texas' fee-shifting precedent. 578 S.W.3d 469, 475 (Tex. 2019).  Before addressing the merits of the appeal, the court examined the law governing attorney's fees in fee-shifting situations.  *Id*. at 487.

The court noted that it first outlined a factor-based method to assess reasonable and necessary attorney's fees in *Arthur Andersen & Co. v. Perry Equip. Corp.  Id*. at 493–94 (citing *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997)).  Those factors are:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

(2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Id.* The court introduced the lodestar method in *El Apple I, Ltd. v. Olivas* to provide "additional guidelines." *Id.* (citing *El Apple I*, 370 S.W.3d at 760).

Because some courts have treated *Arthur Andersen* and *El Apple I* as establishing two different methods for calculating attorney's fees, the court in *Rohrmoos Venture* clarified there has only ever been one method: the "traditional," or *Arthur Andersen*, method. *Id.* at 496. The lodestar method was "developed as a 'short hand version' of the *Arthur Andersen* factors and was never intended to be a separate test or method." *Id.*

As stated in *El Apple I*, the lodestar method requires first determining "'the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work.'" *Id.* at 494 (quoting *El Apple I*, 370 S.W.3d at 760). The number of such hours is then multiplied by the applicable rate to produce the lodestar. *Id.* The fact finder may adjust this base lodestar using relevant factors. *Id.* The starting point for determining a lodestar fee award, however, "is the number of hours 'reasonably expended on the litigation,' and proof of reasonable hours 'should include the basic facts underlying the lodestar, which are: (1) the nature of the work, (2) who performed the services and their rate, (3) approximately when the services were performed, and (4) the number of hours worked.'" *Id.* at 494–95 (quoting *El Apple I*, 370 S.W.3d at 762–63).

The base lodestar calculation usually includes at least the following *Arthur Andersen* factors: "'the time and labor required,' 'the novelty and difficulty of the questions involved,' 'the skill required to perform the legal service properly,' 'the fee customarily charged in the locality for similar legal services,' 'the amount involved,' 'the experience, reputation, and ability of the lawyer or lawyers performing the services,' 'whether the fee is fixed or contingent on results obtained,' 'the uncertainty of collection before the legal services have been rendered,' and 'results

obtained.'" *Id*. at 500 (quoting *Arthur Andersen*, 945 S.W.2d at 818). *Arthur Andersen* lists relevant considerations that may justify an adjustment to the base lodestar, but "considerations already incorporated into the base calculation may not be applied to rebut the presumption that the base calculation reflects reasonable and necessary attorney's fees." *Id*. at 501–02.

Sufficient evidence of these factors includes, at least, evidence of "(1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Id*. at 502. Although not required, contemporaneous "billing records are *strongly* encouraged to prove the reasonableness and necessity of requested fees when those elements are contested." *Id*. Conclusory testimony will not support a fee award. *Id*. at 501.

Janai-Nebo did not object to Sanford's evidence but merely contested the conclusions drawn therein. In their brief, Janai-Nebo contend that the trial court erred when it "neglected" the *Arthur Andersen* criteria and failed to apply the lodestar method to determine Sanford's attorney's fees award. Janai-Nebo cite no authority for their argument, arguing only that this was a "routine lawsuit," that the 700+ hours claimed by Sanford's counsel is "clearly excessive," and a "large portion" of the time spent by Sanford's counsel dealt with Janai's counterclaims. Janai-Nebo also imply that the attorney's fees award is excessive because it exceeds the amount of damages. We disagree.

Sanford offered into evidence contemporaneous billing records and attorney affidavits that enumerate, analyze, and apply each *Arthur Andersen* factor. *See id*. at 502. Sanford's attorney affidavits also explained that billing segregation was not necessary because Janai's counterclaims arose from Sanford's claims to recover amounts owed under the Franchise Agreement.

Additionally, there is no rule that attorney's fees cannot be more than actual damages. *Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126, 153 (Tex. App.—Dallas 2012, no pet.).

Sanford's evidence was more than sufficient to support the trial court's attorney's fees award, and the trial court did not abuse its discretion in so ordering. *See Rhormoos Venture*, 578 S.W.3d at 501–02. Accordingly, we overrule Janai-Nebo's seventh issue.

### CONCLUSION

Having overruled all of Janai-Nebo's issues, we affirm the trial court's judgment.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

181079F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ANNE JANAI AND NEBO & FINCH, INC., Appellant

No. 05-18-01079-CV     V.

SANFORD ROSE ASSOCIATES INTERNATIONAL, INC., Appellee

On Appeal from the 219th Judicial District Court, Collin County, Texas
Trial Court Cause No. 219-05695-2016.
Opinion delivered by Justice Partida-Kipness. Justices Osborne and Pedersen, III participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 13th day of February, 2020.